Defendant, Arthur J. Carson, appeals from a May 20, 1998 judgment of the Franklin County Court of Common Pleas finding him guilty of one count of aggravated robbery, two counts of kidnapping, as well as one count of having a weapon while under disability. Each count was accompanied by an associated firearm specification.
Shortly after closing on the night of September 7, 1996, a Donato's restaurant located on Morse Road near I-270 was robbed by two masked gunmen. Clysta Riffe was the assistant manager on duty that evening and was responsible for closing the store after hours. In addition to Ms. Riffe, Gregory Leach, Keenan Page, and Jim Haggins were also working the late shift.
Shortly after closing, Ms. Riffe was in the restaurant office counting receipts while the rest of the employees were in other parts of the restaurant cleaning. While Ms. Riffe was in the office, Keenan Page exited the back door in order to deposit a load of dirty towels in a bin located near the rear of the establishment. As he walked through the back door, it shut and locked automatically behind him. When he knocked to be let back in, Ms. Riffe answered the door and found Page was being held by two masked gunmen.
After entering through the back door, the gunmen announced that a robbery was in progress and ordered everyone to the ground. One of the masked gunmen searched the office taking most, but not all, of the money on Ms. Riffe's desk. Thereafter, the gunmen demanded to be shown where the rest of the money was located, at which time Ms. Riffe disclosed the location of the store's safe. From the safe the gunmen took a Brinks deposit box containing approximately $500 and several tubes which were used to deposit money into the safe in $20 increments. Nothing was taken from the restaurant's cash registers.
Ms. Riffe estimated the duration of the robbery to have lasted just under two minutes. She described the gunman who remained with her during the course of the robbery as a black male, standing approximately 6' 3", wearing dark pants and a black hooded sweatshirt. During the robbery, the gunman had the hood of the sweatshirt over his head and a bandanna covering his face. Ms. Riffe described the second gunman as approximately 5' 5" and dressed in dark clothing.
Keenan Page and Jim Haggins did not testify at trial, however, Gregory Leach was called as a witness and described the robbery in terms similar to those used by Ms. Riffe. According to Leach, the taller gunman wore a black hooded sweatshirt, black jeans, black shoes, and a black bandanna over his face. Leach described the shorter gunman as wearing baggy blue jeans, a dark pullover, a dark green nylon jacket, and a bandanna over his face. At trial, neither Riffe nor Leach were able to positively identify defendant because both gunmen wore bandannas covering their faces. However, the state presented a substantial amount of circumstantial evidence linking defendant to the crime.
Almost immediately after the robbery, Ohio State Highway Patrol Officer Steven Mahl was on routine patrol on I-270. Soon after entering the flow of northbound traffic in the area of I-270 and Morse Road, Mahl observed a 1980 Oldsmobile drift across the marked lanes. Suspecting the driver of the vehicle might have been under the influence, Officer Mahl activated his patrol beacons in order to initiate a traffic stop. Apparently seeing the beacons, the driver of the Oldsmobile initially slowed, then sped away. A lengthy chase ensued, reaching speeds in excess of one hundred miles per hour. The chase extended north around the outerbelt as far as Tuttle Crossing on the west side of the city. There, the Oldsmobile turned and headed back to the east eventually turning south on State Route 315. In the vicinity of State Route 315 and Route 161, officers deployed a device known as a stop stick in order to puncture the fleeing vehicle's tires. After the Oldsmobile came to a stop, defendant and two other individuals, Oronde A. Page and Douglas L. Rodgers, exited the car and fled into a wooded area near the roadway. All three individuals were apprehended shortly thereafter.
During the chase, several objects were jettisoned from the fleeing vehicle. Among those objects recovered were a dark green nylon jacket, a pair of dark jeans containing an ATT calling card issued to codefendant Rodgers, currency, a Brinks deposit box, and a pair of gloves.[1] Additionally, several bills totaling $131, money tubes, and an additional pair of gloves were discovered by a K-9 unit on the grounds of an apartment complex behind the restaurant. An inventory search of the Oldsmobile produced additional cash deposit tubes taken in the robbery, however, no weapons were recovered from either the vehicle or the side of the roadway.
Defendant was ultimately indicted for one count of aggravated robbery and four counts of kidnapping in connection with the robbery. Out of the same incident, defendant was also charged with possessing a weapon while under disability. A nolleprosequi was entered by the state as to two of the kidnapping offenses and one of the firearm specifications. A jury trial was held, and on May 15, 1998, defendant was found guilty of aggravated robbery, two counts of kidnapping, and possession of a weapon while under disability. Thereafter, the trial court imposed concurrent six year terms for aggravated robbery and kidnapping, in addition to a consecutive three year term on the firearm specification and an eleven month sentence on the weapon under disability charge. Defendant now appeals raising the following six assignments of error:
 FIRST ASSIGNMENT OF ERROR: The court committed plain error by failing to instruct the jury on the mitigating factor reducing kidnapping to a felony of the second degree if the victim is released in a safe place and unharmed.
 SECOND ASSIGNMENT OF ERROR: Appellant's kidnapping convictions were not supported by the evidence and were against the manifest weight of the evidence as the evidence plainly established that the victims were released in a safe place and unharmed.
 THIRD ASSIGNMENT OF ERROR: The evidence failed to establish that the weapons in the possession of the robbers met the statutory definition of a firearm.
 FOURTH ASSIGNMENT OF ERROR: The evidence was legally insufficient on the element of identity.
 FIFTH ASSIGNMENT OF ERROR: Appellant's weapon under disability conviction must be reversed as: (1) count seven of the indictment does not state an offense; (2) the state failed to prove appellant was in possession of a device meeting the statutory definition of a firearm; and (3) the jury instructions presented the jury with a factual issue they could not reasonably decide against appellant based on the evidence before them.
 SIXTH ASSIGNMENT OF ERROR: Pursuant to R.C. 2941.25, related counts of aggravated robbery and kidnapping were allied offenses of similar import, committed with a single animus, permitting sentence to be imposed for one offense or the other, but not on both.
In his first and second assignments of error, defendant alleges the trial court committed plain error when it failed to instruct the jury on the mitigating factor reducing kidnapping from a felony of the first degree to a felony of the second degree. In his sixth assignment of error, defendant alleges the trial court erred when it failed to merge the offenses of aggravated robbery and kidnapping pursuant to R.C. 2941.25. Defendant's first, second, and sixth assignments of error are interrelated and will be addressed together.
R.C. 2905.01 provides that no person shall by force, threat, or deception, restrain another of his or her liberty in order to facilitate the commission of a felony or flight thereafter. R.C. 2905.01(A)(2). Whomever violates this section is guilty of a first degree felony unless the offender releases the victim or victims in a safe place, unharmed. R.C. 2905.01(C). In that event, the offense constitutes a felony of the second degree.
In this case, defendant was charged with aggravated robbery and kidnapping as the result of the same conduct. As set forth above, the masked gunmen entered through the back door of the Donato's restaurant, announced that a robbery was in progress, and ordered everyone to the ground. After doing so, the gunmen collected money from Ms. Riffe's office and the restaurant safe, and then left through the back door. No shots were fired, and no injuries were inflicted. In addition, there was no restraint or movement beyond that needed to accomplish the robbery. The gunmen immediately fled the area, leaving the victims free and unrestrained.
As conceded by plaintiff, the evidence in this case supports no interpretation but that the victims were released safely and unharmed. Accordingly, the trial court erred when it failed to instruct the jury on the mitigating factor reducing the charged offense. As such, defendant's first and second assignments of error are sustained.
The evidence presented in this case also does not support defendant's separate convictions for both aggravated robbery and kidnapping. Where the same conduct may be construed to constitute two or more allied offenses of similar import, a defendant may be charged for each offense, but may be convicted of only one. R.C. 2941.25(A). The determination of whether two offenses constitute allied offenses of similar import turns upon an examination of the elements of the two offenses.State v. Donald (1977), 57 Ohio St.2d 74. In the first step, the elements of the two offenses are compared. If the elements correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes constitute allied offenses of similar import. In the second step, the defendant's conduct is examined in order to determine whether the defendant can be convicted of both offenses. If the crimes are found to have been committed separately, or if there was a separate animus for each offense, then the defendant may be convicted of both offenses. Newark v. Vazirani (1990),48 Ohio St.3d 81.
The standard for determining whether kidnapping and another offense have been committed with a single animus appears in the syllabus to State v. Logan (1979), 60 Ohio St.2d 126.
 In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus * * * this court adopts the following guidelines:
 (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.
In this case, no evidence was presented that would support a finding that the crimes of aggravated robbery and kidnapping were committed separately. As set forth in the statement of the facts, the gunmen entered the restaurant and ordered the employees to the ground. Thereafter, the gunmen took money from Ms. Riffe's office and the restaurant safe, and then fled the scene of the robbery leaving the restaurant employees unrestrained and unharmed. The duration of the robbery was estimated by Ms. Riffe to have lasted just under two minutes. There was no restraint or asportation beyond that necessary to accomplish the robbery. While the victims of the robbery were restrained for the time necessary to commit the robbery, there was no risk apart from that involved in the underlying crime. Based upon these circumstances, it cannot be said that the crimes were either committed separately or with a separate animus as to each. As such, defendant's sixth assignment of error is sustained.
In his third assignment of error, defendant asserts that the evidence presented failed to establish that the weapons brandished by the masked gunmen met the statutory definition of a firearm set forth in R.C. 2923.11(B)(1):
 "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. * * *[2]
While defendant is correct in pointing out that not all devices which resemble guns are in fact firearms under the statutory definition, defendant's view of the evidence required to support a finding that defendant possessed a firearm is too restrictive.
As noted by the state, proof that a firearm was operable or potentially operable, may be established where a defendant brandishes what appears to be a firearm and implicitly or expressly threatens to use it at the time of the offense.State v. Thompkins (1997), 78 Ohio St.3d 380, 384. In other words, where the alleged gun is not recovered, possession of a firearm, and consequently an associated firearm specification or charge of possession of a weapon while under disability, may be proven beyond a reasonable doubt by circumstantial evidence.Id. at 385. That evidence may consist of eyewitness testimony of individuals who observed the alleged weapon and the circumstances in which it was used. State v. Murphy (1990),49 Ohio St.3d 206.
In State v. Thompkins, the Ohio Supreme Court rejected the view which had been previously adopted that the evidence must consist of certain tangible indicia such as bullet holes, spent shell casings, etc. Id. at 384. In this case, the testimony at trial established that the two masked gunmen gained entrance to the restaurant by holding their guns to Keenan Page when he knocked on the back door. When they entered, the gunmen declared that a robbery was in progress and ordered everyone to the floor. During the course of the robbery, the gunmen pointed their weapons at the victims. In several instances, the gunmen pointed their weapons ordering the victims not to look at their faces. The gunmen also used their weapons to gain access to Ms. Riffe's office and to the restaurant safe. Both Ms. Riffe and Gregory Leach described the weapon used by the taller gunman as dark blue, resembling a sub-machinegun more than a traditional handgun. Finally, the weapons were implicitly used to control and restrain the victims in order to effectuate the robbery. Based upon the foregoing, there was sufficient circumstantial evidence presented to support a finding that defendant possessed and used a firearm in the commission of a felony. Accordingly, defendant's third assignment of error is overruled.
In his fourth assignment of error, defendant argues there was insufficient evidence presented to identify him as one of the individuals involved in the September 1996 robbery. Alternatively, defendant argues the jury's finding was against the manifest weight of the evidence.
The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. In State v. Thompkins, the Ohio Supreme Court explained:
 With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. * * * In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. * * * [Id. at 386-387.] [Emphasis sic.]
In State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported (1993 Opinions 5437), this court explained that when reviewing a conviction challenged on the basis of the sufficiency of the evidence, the evidence must be construed in a light most favorable to the prosecution, and the reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 5438.
However, we continued noting that the test for reviewing the manifest weight of the evidence is slightly different. When the manifest weight of the evidence is the issue, the evidence is not construed most strongly in favor of the state and the appellate court must engage in a limited weighing to determine whether there is sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Id. citing State v. DeHass (1967), 10 Ohio St.2d 230. In other words, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. Id. at 5438-5439.
At trial, Ms. Riffe testified regarding the physical characteristics of the two gunmen. In regard to the taller gunman, the one who followed her to her office and then to the restaurant safe, Ms. Riffe's description matched the general physical characteristics of defendant. Furthermore, evidence was presented that the robbery took place at approximately 1:30 a.m. in the vicinity of the intersection of I-270 and Morse Road. Further evidence was presented that at approximately 1:47 a.m., Ohio Highway Patrol Officer Mahl initiated the traffic stop of the Oldsmobile containing the defendant and his codefendants. The stop was attempted in the immediate area of the robbery and led to a high speed chase which ended with defendant's flight and apprehension. During the course of that chase, numerous objects were thrown from the fleeing vehicle. Among those items were clothing matching the description of the clothing worn by the gunmen. Additionally, cash, a Brinks box taken in the robbery, cash deposit tubes and plastic gloves were recovered. The jacket was identified by Gregory Leach as the one worn by one of the gunmen during the robbery. Although circumstantial, we are unable to find that the evidence relied upon to link defendant to the scene of the robbery was legally insufficient. Additionally, there was sufficient, competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Accordingly, defendant's identification was not against the manifest weight of the evidence. As such, defendant's fourth assignment of error is overruled.
Finally, in his fifth assignment of error, defendant challenges the legal sufficiency of the indictment charging defendant with possessing a weapon while under disability. Defendant was charged with the aforementioned offense based upon a previous juvenile adjudication of drug abuse. However, through inadvertence, the indictment attributed the prior juvenile conviction to codefendant Douglas Rodgers.
The United States Supreme Court has set forth two criteria by which the sufficiency of an indictment is to be determined.State v. Frazier (1995), 73 Ohio St.3d 323, 332, quotingRussell v. United States (1962), 369 U.S. 749, 763-764,82 S.Ct. 1038. First, the indictment must contain the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet at trial. Second, in case any other proceedings are taken against a defendant for a similar offense, the indictment must show with accuracy to what extent a defendant may plead a former acquittal or conviction.
In this case, the indictment provided:
 The jurors of the Grand Jury of the State of Ohio * * * upon their oath do find and present that Arthur J. Carson late of said County, on or about the 7th day of September in the year of our Lord, one thousand nine hundred ninety-seven within the County of Franklin aforesaid, in violation of section 2923.13 of the Ohio Revised Code, did knowingly acquire, have, carry and/or use a firearm the said Douglas Lee Rodgers having been adjudicated a juvenile delinquent child for commission of an offense that, if committed by an adult, would have been any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse to wit: on September 16, 1996, in the Franklin County Domestic Court, Juvenile Division, the said Arthur J. Carson was convicted of Drug Abuse, a violation of section 2925.11 of the Ohio Revised Code. [Emphasis sic.]
In spite of the typographical error in defendant's indictment, the indictment did contain the elements of the charged offense and was sufficient to apprise defendant of the nature of the offense charged. Under the circumstances, defendant clearly had notice that he was charged with possession of a weapon while under disability as a result of a previous juvenile adjudication for drug abuse. Accordingly, we find that the defendant has failed to demonstrate that the indictment was insufficient or that he was prejudiced by the typographical error. As such, defendant's fifth assignment of error is overruled.
In summary, defendant's third, fourth, and fifth assignments of error are overruled. However, defendant's first, second, and sixth assignments of error are sustained and this matter is hereby affirmed in part, reversed in part, and remanded to the Franklin County Court of Common Pleas for resentencing.
Affirmed in part; reversed in part; cause remanded forresentencing.
TYACK and YOUNG, JJ., concur.
YOUNG, J., retired, of the Tenth District Court of Appeals, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] DNA tests were conducted comparing blood samples from the three defendants to blood stains found on the gloves. Those tests excluded defendant and codefendant Page as the source, but revealed the blood was similar to that of codefendant Rodgers.
[2] A "deadly weapon" is defined in R.C. 2923.11(A) as:
 * * * [A]ny instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon.